CENTER FOR DISABILITY ACCESS
Isabel Masanque, Esq., SBN 292673
Chris Carson, Esq., SBN 280048
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Mary Melton, Esq., SBN 164407
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Johnson**, <br><br> Plaintiff, <br><br> v. <br><br> **Klose Way Partners, LLC,** a California Limited Liability Company; **Vorelco, Inc.**, a New Jersey Corporation; **M & M Automotive Group, Inc.**, a California Corporation; and Does 1-10, <br><br> Defendants. | **Case No**. <br><br> **Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Scott Johnson complains of Defendants Klose Way Partners, LLC, a California Limited Liability Company; Vorelco, Inc., a New Jersey Corporation; M & M Automotive Group, Inc., a California Corporation; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. Plaintiff is a

1

Complaint

level C-5 quadriplegic. He cannot walk and also has significant manual dexterity impairments. He uses a wheelchair for mobility and has a specially equipped van.

2. Defendants Klose Way Partners, LLC and Vorelco, Inc. owned the real property located at or about 2740 Broadway, Oakland, California, in October 2016.

3. Defendants Klose Way Partners, LLC and Vorelco, Inc. owned the real property located at or about 2740 Broadway, Oakland, California, in May 2017.

4. Defendants Klose Way Partners, LLC and Vorelco, Inc. owned the real property located at or about 2740 Broadway, Oakland, California, in August 2017.

5. Defendants Klose Way Partners, LLC and Vorelco, Inc. owned the real property located at or about 2740 Broadway, Oakland, California, in October 2017.

6. Defendants Klose Way Partners, LLC and Vorelco, Inc. owned the real property located at or about 2740 Broadway, Oakland, California, in December 2017.

7. Defendants Klose Way Partners, LLC and Vorelco, Inc. own the real property located at or about 2740 Broadway, Oakland, California, currently.

8. Defendant M & M Automotive Group, Inc. owned the Volkswagen of Oakland located at or about 2740 Broadway, Oakland, California, in October 2016.

9. Defendant M & M Automotive Group, Inc. owned the Volkswagen of Oakland located at or about 2740 Broadway, Oakland, California, in May 2017.

10. Defendant M & M Automotive Group, Inc. owned the Volkswagen of Oakland located at or about 2740 Broadway, Oakland, California, in August

Complaint

2017.

11. Defendant M & M Automotive Group, Inc. owned the Volkswagen of Oakland located at or about 2740 Broadway, Oakland, California, in October 2017.

12. Defendant M & M Automotive Group, Inc. owned the Volkswagen of Oakland located at or about 2740 Broadway, Oakland, California, in December 2017.

13. Defendant M & M Automotive Group, Inc. owns the Volkswagen of Oakland located at or about 2740 Broadway, Oakland, California, currently.

14. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

15. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

16. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

17. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

18. Plaintiff has gone to Volkswagen of Oakland on a number of occasions during the relevant statutory period, including October 2016, May 2017, August 2017, October 2017 and December 2017.

19. Volkswagen of Oakland is a facility open to the public, a place of public accommodation, and a business establishment.

20. Parking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of Volkswagen of Oakland.

21. However, vehicles controlled by Volkswagen of Oakland consistently parked in the van parking space and access aisle on a regular basis. In fact, cars with service tags that did not have handicap plates or a placard were parked in the van parking space and access aisle.

22. Additionally, during several of Plaintiff's visits, the van parking space and access aisle were obstructed and covered by a large dumpster.

23. As a result, the van parking space was not available to customers with disabilities.

24. The defendants have a practice of placing vehicles in the parking space reserved for persons with disabilities.

25. The Defendants had no policy or plan in place to make sure that the parking space reserved for persons with disabilities remained useable prior to plaintiff's visits.

26. The Defendants have no policy or plan in place to make sure that the parking space reserved for persons with disabilities remain useable, currently.

27. Restrooms are another one of the facilities, privileges, and advantages

Complaint

offered by Defendants to patrons of Volkswagen of Oakland.

28. The restroom door hardware at Volkswagen of Oakland had a traditional style round knob that required tight grasping and twisting of the wrist to operate during plaintiff's visits.

29. Currently, the restroom door hardware at Volkswagen of Oakland has a traditional style round knob that requires tight grasping and twisting of the wrist to operate.

30. Plaintiff personally encountered these barriers.

31. These inaccessible conditions denied the plaintiff full and equal access and caused him difficulty and frustration.

32. Meanwhile, even though plaintiff did not personally encounter the barrier, the restroom doorway clear passage width was less than 32 inches and inaccessible to wheelchair users. In fact, the restroom doorway and stall door width are 17 and 31 inches wide, respectively.

33. The toilet stall was improperly configured and too small for wheelchair users, measuring 36 inches in width and 59 inches in depth.

34. There were wall mounted accessories and equipment in the restroom including paper towel dispenser and disposable seat cover dispenser. These dispensers were mounted so that their highest operable parts were greater than 54 inches above the finished floor.

35. The restroom mirror was mounted on the wall so that its bottom edge was more than 40 inches above the finish floor.

36. The restroom sink was mounted such that the counter or rim was higher than 34 inches above the finish floor.

37. However, instead of providing two grab bars on adjacent or parallel walls for use by persons with disabilities who need to transfer to the toilet, there were no grab bars.

38. Currently, the restroom doorway clear passage width is less than 32

Complaint

inches and inaccessible to wheelchair users.

39. Currently, the toilet stall is improperly configured and too small for wheelchair users, measuring 36 inches in width and 59 inches in depth.

40. Currently, there are wall mounted accessories and equipment in the restroom including paper towel dispenser and disposable seat cover dispenser. These dispensers are mounted so that their highest operable parts are greater than 54 inches above the finished floor.

41. Currently, the restroom mirror is mounted on the wall so that its bottom edge is more than 40 inches above the finish floor.

42. Currently, the restroom sink is mounted such that the counter or rim is higher than 34 inches above the finish floor.

43. Currently, instead of providing two grab bars on adjacent or parallel walls for use by persons with disabilities who need to transfer to the toilet, there are no grab bars.

44. The barriers existed during each of Plaintiff's visits in 2016 and 2017.

45. The plaintiff frequents the Oakland area and has visited there on many occasions in 2016 and 2017. Plaintiff encountered the barriers during his visits. On one occasion he went inside and encountered multiple barriers. He visited Volkswagen of Oakland on five other occasions but was deterred from going inside.

46. Plaintiff visited Volkswagen of Oakland once in October 2016.

47. Plaintiff visited Volkswagen of Oakland once in May 2017.

48. Plaintiff visited Volkswagen of Oakland once in August 2017.

49. Plaintiff visited Volkswagen of Oakland two times in October 2017.

50. Plaintiff visited Volkswagen of Oakland once in December 2017.

51. Plaintiff would like to return and patronize Volkswagen of Oakland but will be deterred from visiting until the defendants cure the violations.

52. The defendants have failed to maintain in working and useable

conditions those features required to provide ready access to persons with disabilities.

53. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

54. The barriers in this complaint are easily fixable. For example, replacing door hardware with accessible hardware is a simple and inexpensive task that can be completed without the need to hire a professional.

55. The restroom dispensers could be lowered so that they are 54 inches or lower. This can be done at little or no cost.

56. Meanwhile, the mirror in the restroom could be removed or lowered so that it is accessible.

57. Plaintiff is and has been deterred from returning and patronizing Volkswagen of Oakland because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to the business to assess ongoing compliance with the ADA and will return to patronize Volkswagen of Oakland as a customer once the barriers are removed.

58. Given the obvious and blatant violation, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 506 F.3d 1191 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to her disability removed regardless

of whether he personally encountered them).

59. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because, had the defendants intended any other configuration, they had the means and ability to make the change.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

60. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

61. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

  a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).
  b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are

   defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

 c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

62. Any business that provides parking spaces must provide a sufficient number of handicap parking spaces. 1991 Standards § 4.1.2(5). 2010 Standards § 208. The required minimum number of handicap parking spaces is dependent on the total number of parking spaces available. *Id.* According to the 1991 Standards, if a parking lot has 1-25 spaces, it must have at least 1 accessible parking space. 1991 Standards § 4.1.2(5)(a). And 1 in every 8 of those accessible parking spaces, but not less than 1, must be a "van" accessible parking space, *i.e.*, having an eight foot access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, a parking lot with 1-25 spaces must have at least 1 accessible space and 1 of them must be van accessible. 2010 Standards § 208.2 & § 208.2.4.

63. Here, the failure to provide available, accessible parking spaces is a violation of the ADA.

64. Restroom door hardware must have handles and other operating devices that have a shape that is easy to use with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate. 1991 Standards § 4.23.2; 4.13.9; 2010 Standards § 404.2.7; 309.4.

65. Here, the failure to provide accessible restroom door hardware is a

Complaint

violation of the law.

66. All doors to restrooms must have a minimum clear opening of 32 inches with the door open 90 degrees, measured between the face of the door and the opposite stop. 1991 Standards § 4.22.2; 4.13.5; 2010 Standards § 404.2.3.

67. Here, the failure to provide the 32 inch wide restroom doorway opening is a violation of the ADA.

68. Where a toilet stall is provided in a restroom in existing facilities, the size and arrangement of the standard toilet stall shall comply with either Fig. 30(a) (standard stall) or Figure 30(b) (alternate stall). 1991 Standards § 4.17.3. A standard stall must be at least 60 inches wide by 56 inches deep (if the toilet is wall mounted) or 59 inches deep if the toilet is floor mounted. 1991 Standards § Figure 30(a). An alternate stall must meet one of two configurations: either (1) be exactly 36 inches by at least 66 inches deep (if the toilet is wall mounted) or 69 inches (if the toilet is floor mounted) and provide front transfer grab bars or (2) be at least 48 inches wide by at least by at least 66 inches deep (if the toilet is wall mounted) or 69 inches (if the toilet is floor mounted) and provide side transfer grab bars. 1991 Standards § Figure 30(b).

69. Here, the toilet stall does not meet any option under the ADA and is in violation of the law.

70. If controls, dispensers, receptacles or other equipment is provided in a restroom, they must be on an accessible route and be mounted so that their highest operable parts are no greater than 54 inches above the floor. 1991 Standards § 4.22.7; 4.27.

71. Here, the failure to ensure that the wall mounted accessories met the height requirement is a violation of the ADA.

72. Mirrors shall be mounted with the bottom edge of the reflecting surface no higher than 40 inches above the finish floor. 1991 Standards § 4.19.6; 2010 Standards § 603.3.

73. Here, the mirror was mounted higher than the maximum permitted and is a violation of the ADA.

74. Sinks must be mounted so that the counter or rim is no higher than 34 inches above the finish floor. 1991 Standards § 4.24.2; 2010 Standards § 606.3.

75. Here, the sink was mounted higher than the maximum permitted and is a violation of the ADA.

76. For a toilet to be considered accessible under the ADA, there must be two grab bars on walls adjacent to the toilet to assist persons with disabilities to transfer to the toilet. 1991 Standards § 4.16.4; 2010 Standards § 604.5.

77. Here, the failure to provide compliant grab bars is a violation.

78. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

79. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

80. Given its location and options, plaintiff will continue to desire to patronize Volkswagen of Oakland but he has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

81. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

82. Because the defendants violated the plaintiff's rights under the ADA,

Complaint

they also violated the Unruh Civil Rights Act and are liable for damages. (Cal. Civ. Code § 51(f), 52(a).)

83. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Cal. Civ. Code § 55.56(a)-(c).)

84. Although the plaintiff was markedly frustrated by facing discriminatory barriers and this frustration possibly qualifies as an emotional distress injury, even manifesting itself with minor and fleeting physical symptoms, the plaintiff does not value this very modest frustration and physical personal injury greater than the amount of the statutory damages.

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: January 16, 2018    CENTER FOR DISABILITY ACCESS

By: *Isabel P. M~*
_____
Isabel Masanque, Esq.
Attorney for plaintiff